United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NANCY CORREA REYES, et al.,

Petitioners,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 3:26-cv-11075-JSC

**ORDER GRANTING APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 5

Before the Court is Petitioners'[1] Ex Parte Motion for Temporary Restraining Order (TRO). (Dkt. No. 5.) On September 29, 2026, Petitioners filed a Petition for Writ of Habeas Corpus and an Ex Parte Motion for Temporary Restraining Order (TRO) immediately releasing her from custody, enjoining Respondents from re-detaining her absent prior notice and a pre-deprivation hearing, enjoining Respondents from transferring her or her children from this District. (Dkt. Nos. 1, 5.[2]) Having reviewed Petitioners' filings and the Respondents' declaration (Dkt. Nos. 1, 2, 4, 5), and for the following reasons, the TRO is GRANTED as modified below.

**BACKGROUND**

According to the record before the Court, Ms. Correa Reyes entered the United States on May, 27, 2024 with her three minor children ("Children"). (Dkt. No. 5-1 ¶ 8.) Two days later, the Department of Homeland Security ("DHS") paroled the family. (*Id.*) An asylum officer "found she had a credible fear of prosecution" and set a yearlong parole beginning on June 17, 2024. (Dkt. No. 5 at 5.) In April 2025, Ms. Correa Reyes "filed an application for asylum, withholding

[1] Based on Petitioners' declarations in their motion for a TRO, Ms. Correa Reyes' children are being detained in custody alongside her. (*See* Dkt. No. 5-1 ¶¶ 3-4.) Therefore, all four are proper petitioners in the present action.

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

of removal, and protection under the Convention Against Torture, with her children as derivatives." (Dkt. No. 2 ¶ 25.) Ms. Correa Reyes' individual hearing was scheduled for September 5, 2025. (*Id.*) She was slightly late for her hearing, at which point "[t]he Immigration Judge ordered the family removed in absentia and deemed their applications abandoned." (Dkt. No 5-1 ¶ 10.) On March 4, 2026, Ms. Correa Reyes moved to reopen her removal order under 8 U.S.C. § 1229a(b)(5)(C)(i), alongside a fee waiver. (*Id.* ¶ 11.) An Immigration Judge denied her fee waiver and marked the motion to reopen as "rejected as moot." (*Id.* ¶ 13.) Ms. Correa Reyes then appealed the decision to the Board of Immigration Appeals ("BIA") and asked for an emergency stay of removal. (*Id.* ¶¶ 14-16). The appeal and stay motion both remain pending before the BIA. (*Id.* ¶ 17). In March 2026, at a check-in at 630 Sansome Street, ICE served Ms. Correa Reyes with an Order of Supervision, Form I-220B. (*Id.* ¶ 6.) Ms. Correa Reyes complied with those conditions. (*Id.* ¶ 7.)

On September 29, 2026, in accordance with the March 31, 2026 Order of Supervision, Ms. Correa Reyes reported to 630 Sansome Street for a scheduled check-in with Respondents, at which point she was arrested and taken into custody along with her three children. (Dkt. No. 5-1 ¶ 3.) That same day, this Petition was filed and Petitioners' counsel provided notice of the Petition and a forthcoming motion for a TRO, along with a copy of the Petition, to Respondents' counsel. (*Id.* ¶¶ 5, 18.) Later that day, counsel filed the motion for the TRO and declared she would be immediately sending a copy to Respondents' counsel. (*Id.* ¶ 18.) Respondents have submitted a declaration including documentation that Ms. Correa Reyes' release has been revoked, they will not conduct a custody review, they are in possession of a travel document for Ms. Correa Reyes, that they expect her removal to be executed during the remainder of September. (Dkt. No. 4-1 at 2, 7.) Respondents later filed a response to Petitioners' motion. (Dkt. No. 7.)

## LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

**DISCUSSION**

Petitioners have demonstrated a likelihood of success on the merits of their claim that their ongoing detention violates their procedural due process rights under the Fifth Amendment. Petitioners have a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioners to a bond hearing before an immigration judge prior to any arrest or detention. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030–36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances). Their release from ICE custody after their initial detention at the border reflected a determination by the government that they were neither a flight risk nor a danger to the community, and Petitioners have a strong interest in remaining at liberty unless they no longer meet those criteria. On this record, no evidence indicates Petitioners no longer meets that criteria, and thus Petitioners have a strong likelihood of success on the merits.

Petitioners have also demonstrated a likelihood of irreparable injury in the absence of

temporary relief. The likely unconstitutional deprivation of liberty that Petitioners face is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the government is minimal. The Government, at most, faces a short delay in detaining Petitioners if it ultimately demonstrates their detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioners'] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips decidedly in Petitioners' favor.

A TRO immediately releasing Petitioners is appropriate to return them to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status

which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioners' likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioners satisfy all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c).

**ORDER**

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioners' application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Petitioners immediately from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioners without notice and a pre-deprivation hearing before a neutral decisionmaker. Respondents are ENJOINED from removing Petitioners from this judicial district, and, if they have already transferred them, are ORDERED to return them to this judicial district. Respondents are PROHIBITED from removing Petitioners from the United States until these proceedings have terminated.

(3) During the pendency of the habeas proceedings, Respondents are ENJOINED AND RESTRAINED from moving Petitioners from the jurisdiction.

(4) Respondents shall provide a status report confirming Petitioners' release by 11:00 a.m. September 30, 2026.

(5) Respondents are ORDERED TO SHOW CAUSE in-person at 9:00 a.m. via Zoom on

United States District Court
Northern District of California

Tuesday, October 13, 2026, as to why the petition should not be granted. Respondents SHALL file a response to Petitioners' petition by no later than October 5, 2026. Any reply SHALL be filed by October 8, 2026 at noon. (6) This Order shall remain in effect until 5:00 p.m. on October 13, 2026 or as otherwise directed by the Court.

This Order disposes of Docket No. 5.

**IT IS SO ORDERED.**

Dated: September 29, 2026

JACQUELINE SCOTT CORLEY
United States District Judge