UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NANCY CORREA REYES, et al.,

Petitioners,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 26-cv-11075-JSC

**ORDER GRANTING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 19

On September 29, 2026, Nancy Correa Reyes, a 46-year-old mother and asylum-seeker from Mexico, who has lived in California for more than two years, was arrested and detained along with her three minor children by Immigration and Customs Enforcement (ICE) officers at a scheduled check-in at the San Francisco ICE Field Office. (Dkt. No. 19 ¶ 1, 5.)[1] Ms. Correa Reyes filed a petition for a writ of habeas corpus and a motion for a temporary restraining order (TRO) seeking her and her children's immediate release from custody. (Dkt. No. 2, 5, 19.) The Court granted the TRO, ordering Respondents to release Ms. Correa Reyes and her children and enjoining Respondents from (1) re-detaining Ms. Correa Reyes and her children absent prior notice and a pre-deprivation hearing before a neutral decisionmaker, and (2) removing them from this judicial district or from the United States while these proceedings are pending. (Dkt. No. 8.) The Court also ordered Respondents to show cause as to why the habeas petition should not be granted. (*Id.*) The TRO remains in effect until October 27, 2026. (Dkt. No. 17.) Having reviewed the parties' submissions, and the relevant legal authority, the Court GRANTS the habeas

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

petition.[2]

## BACKGROUND

Ms. Correa Reyes is a 46-year-woman from Mexico. (Dkt. No. 19 ¶ 1.) She has eight children, five of whom live with her in Napa, California. (*Id.* ¶ 40.) According to the record before the Court, Ms. Correa Reyes entered the United States on May 27, 2024, with her three minor children. (*Id.* ¶¶ 2, 20.) Two days later, the Department of Homeland Security ("DHS") paroled the family. (*Id.*) An asylum officer "found she had a credible fear of prosecution" and set a year-long parole beginning on June 17, 2024. (*Id.* ¶ 21-22.) In April 2025, Ms. Correa Reyes "filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, with her children as derivatives." (*Id.* ¶ 23.) Ms. Correa Reyes's individual hearing was scheduled for September 5, 2025. (*Id.*) Due to significant traffic delays and navigation challenges, Ms. Correa Reyes arrived approximately 30 minutes late for her hearing, at which point "[t]he Immigration Judge ordered the family removed in absentia and deemed their applications abandoned." (*Id.* ¶ 24-25.) On March 4, 2026, Ms. Correa Reyes moved to reopen and rescind the in absentia order under 8 U.S.C. § 1229a(b)(5)(C)(i) and 8 C.F.R. § 1003.23(b)(4)(ii), alongside a fee waiver. (*Id.* ¶ 26.) An Immigration Judge denied her fee waiver and marked the motion to reopen as "rejected as moot." (*Id.* ¶ 28.) Ms. Correa Reyes appealed the decision to the Board of Immigration Appeals ("BIA") and filed an emergency stay of removal. (*Id.* ¶¶ 29). The appeal and stay motion both remain pending before the BIA. (*Id.* ¶ 30). On March 31, 2026, at a check-in at the San Francisco ICE Field Office, ICE served Ms. Correa Reyes with an Order of Supervision, Form I-220B. (*Id.* ¶ 31.) Ms. Correa Reyes complied with all its conditions. (*Id.* ¶ 31, 33.)

On September 29, 2026, in accordance with the March 31, 2026, Order of Supervision, Ms. Correa Reyes reported to the San Francisco ICE Field Office at 630 Sansome Street for a scheduled check-in with Respondents. (*Id.* ¶ 34). An ICE officer informed Ms. Correa Reyes that she and her children were going to be "transferred" to San Diego and gave her a copy of an

[2] The parties stipulated to submit the habeas petition on the papers, without oral argument, and vacate the hearing scheduled for October 27, 2026. (Dkt. No. 24.)

English language document, which turned out to be a Notice of Revocation of Release. (*Id.*) The ICE officer did not translate the document verbally, provide a written translation, or otherwise explain the content of the document in Spanish. (*Id.*) Instead, the ICE officer simply instructed Ms. Correa Reyes to handwrite her fear of returning to Mexico on the document, which she did. (*Id.*) The ICE officer then brought in four additional presumed ICE officers who were assigned to transport Ms. Correa Reyes and her children to San Diego. (*Id.* ¶ 34-35.)

Of the six ICE officers with whom Ms. Correa Reyes interacted during this encounter, none of the officers explained the Notice of Revocation of Release, provided any reasons for revoking her release, interviewed Ms. Correa Reyes, or otherwise informed her of ICE's intent to deport her and her children. (*Id.* ¶ 35-37.) Although the English-language notice stated ICE's intent to conduct a same-day interview with Ms. Correa Reyes, no interview was ever conducted. (*Id.* ¶ 35.) When Ms. Correa Reyes asked the group of officers why she was being transferred to San Diego and why she was not given more time to prepare, the officers responded that she had been "given a lot of time already" and that she had "not done what [she] needed to do," but did not explain or clarify these statements. (*Id.*) The officers also refused to allow Ms. Correa Reyes to use her cell phone to call her attorney and instead confiscated Ms. Correa Reyes's cell phone as well as her children's cell phones. (*Id.*) Prior to this confiscation, Ms. Correa Reyes successfully sent one text message to alert her attorney of her detention and impending "transfer". (*Id.*)

The officers then took Ms. Correa Reyes and her children into custody and drove them to the San Francisco airport. (*Id.*) During this drive, one of the ICE officers threatened Ms. Correa Reyes and her children that if any of the children tried to escape, they would be "caught, sent to different places, and separated from their mother," which was particularly upsetting to Ms. Correa Reyes's 11-year-old son. (*Id.*)

ICE then took Ms. Correa Reyes and her children on a flight to San Diego. (*Id.* ¶ 36.) Once they arrived, they waited at the San Diego airport "for many hours" until ICE officers told them that they had received an order to return her and her children to San Francisco. (*Id.*) They arrived back in San Francisco at approximately 9:30 pm. (*Id.*) ICE brought Ms. Correa Reyes and her children back to the San Francisco ICE Field Office, which was closed. At this point, the ICE

officers returned the confiscated cell phones to Ms. Correa Reyes and her children and released them at approximately 11:30 pm. (*Id.*)

That same day, Petitioners filed the underlying habeas petition and TRO seeking to enjoin Defendants. (*Id.* ¶¶ 5, 18.) Later that day, counsel filed the motion for the TRO. (*Id.* ¶ 18.) Respondents submitted a declaration including documentation that Ms. Correa Reyes' release was revoked, they would not conduct a custody review, they were in possession of a travel document for Ms. Correa Reyes, and they intended to execute her removal in September 2026. (Dkt. No. 4-1 at 2, 7.) Respondents subsequently filed a response to Petitioners' motion. (Dkt. No. 7.) The Court granted the TRO, requiring Respondents to release Petitioners and enjoining Respondents from re-detaining Petitioners without notice and a pre-detention hearing before a neutral decision maker. (Dkt. No. 8.) Respondents released Petitioners that night (Dkt. No. 10) and filed a motion for reconsideration to dissolve the TRO. (Dkt. No. 9.)

Petitioners then filed a timely first amended habeas petition. (Dkt. No. 19.) To accommodate the amended briefing schedule, the Court extended the temporary restraining order for an additional 14 days, until 5 p.m. on October 27, 2026. (Dkt. No. 17.)

## DISCUSSION

Petitioners bring five legal claims: (1) their detention violates 8 U.S.C. § 1231(a) and the Fifth Amendment Due Process Clause because Petitioners' in absentia removal order is not administratively final and there was no material change in circumstances; (2) their re-detention without notice violates 8 C.F.R. §§ 241.4(l) and 241.13(i); (3) their re-detention without notice violates their procedural due process rights under the Fifth Amendment; (4) their re-detention violates their substantive due process rights under the Fifth Amendment; and (5) their re-detention violates the Administrative Procedure Act, 5 U.S.C. § 706(2). The parties' briefing focuses on the first three grounds, which are dispositive of the relief sought, and so the Court only addresses those.

Respondents argue the Court lacks subject matter jurisdiction over Petitioners' claims. Alternatively, Respondents contend each claim fails. Addressing these arguments in turn, the Court concludes it has subject matter jurisdiction and Petitioners prevail on the first three claims.



United States District Court
Northern District of California

United States District Court
Northern District of California

## I. JURISDICTION

As a threshold matter, Respondents argue the Court lacks jurisdiction over this Petition because "[c]ourts lack jurisdiction to review a decision to commence or adjudicate removal proceedings or execute removal orders" under 8 U.S.C. § 1252(g). (Dkt. No. 21 at 10.) This argument remains a "non-starter." *Prasomsy v. Albarran*, No. 3:26-CV-09534-JSC, 2026 WL 2653813, at *3 (N.D. Cal. Sept. 8, 2026) (quoting *Saeteun v. Albarran*, No. 26-CV-04743-CRB, 2026 WL 1454304, at *2 (N.D. Cal. May 22, 2026)). Habeas petitions in which petitioners make "statutory and constitutional challenges to post-removal-period detention," as they do here, are not challenges to the Attorney General's discretion. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

In this case, Petitioners allege their *detention* was unlawful both because Respondents violated 8 U.S.C. § 1231(a) by detaining Petitioners when they were not, in fact, subject to an administratively final order of removal, and because ICE violated 8 C.F.R. §§ 241.4(l) and 241.13(i), as well as Petitioners' procedural and substantive due process rights under the Fifth Amendment, when they re-detained Petitioners without proper notice. Respondents argue the removal order was administratively final, and they complied with 8 C.F.R. § 241 and due process requirements in revoking Petitioners' Order of Supervision, such that there are no legitimate statutory or due process violations over which this Court could retain jurisdiction. But as the Court will discuss in further detail below, Respondents' contentions are not supported by the law or the record. For example, Respondents' assertion Petitioners are subject to an administratively final order of removal contravenes Ninth Circuit precedent in *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021), and Respondents offer no evidence Petitioners were notified of the reasons for revocation of their release or afforded an interview to respond.

Accordingly, Petitioners "do[] not seek relief from this Court from a decision to execute a removal order ... [and instead] challenge[] solely the propriety of [their] *detention*, not the core proceedings involved in [their] removal." *Sipaseuth v. Becerra*, No. 26-CV-07942-BLF, 2026 WL 2521847, at *4 (N.D. Cal. Aug. 26, 2026) (quoting *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *2 (S.D. Cal. Oct. 22, 2025)). This case is therefore easily distinguished from *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022), in which the petitioner

was seeking a stay of removal, as opposed to release from custody. And the Ninth Circuit has "been clear that § 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025). Petitioners sufficiently demonstrate they were "in custody in violation of the Constitution or laws or treaties of the United States"—and in particular in violation of 8 U.S.C. § 1231(a), 8 C.F.R. §§ 241.4(l) and 241.13(i), and the Fifth Amendment—independent of the merits of any removal order. 28 U.S.C. § 2241(c)(3). The Court has jurisdiction to hear Petitioners' challenge to their re-detention.

## II. DETENTION IN VIOLATION OF 8 U.S.C. § 1231(A)

The next question before the Court is whether Petitioners' detention is authorized by Section 1231(a). Section 1231(a) "applies to detention after the entry of a final removal order." *Avilez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023). Specifically, the statute "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." *Id.* at 531 (citing 8 U.S.C. § 1231(a)(1)-(2)). This "removal period" begins on the latest of the following three dates: "(1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." *Id.* (citing 8 U.S.C. § 1231(a)(1)(B)(i)–(iii)). Whether Section 1231(a) applies in this case therefore hinges on whether Petitioners are currently subject to a removal order that has become administratively final.

In this case, an Immigration Judge ordered Petitioners removed in absentia on September 5, 2025. (Dkt. No. 19 ¶ 25.) Petitioners then timely filed a motion to reopen their removal proceedings with the San Francisco Immigration Court on March 4, 2026. (*Id.* ¶ 45.) While that motion was pending with the immigration court, the removal order was stayed. (*Id.*); *see* 8 U.S.C. § 1229(a)(b)(5)(C). The Immigration Judge denied the motion to reopen on March 22, 2026. (*Id.* ¶ 45.) Petitioners timely appealed this denial on April 20, 2026. (*Id.*) That appeal remains pending before the BIA. (*Id.*)

"A collateral challenge to a removal order, such as a motion to reopen proceedings,

generally does not prevent the removal period from beginning." *Li v. Albarran*, No. 1:26-CV-00980-DAD-EFB, 2026 WL 970529, at *3 (E.D. Cal. Apr. 10, 2026) (citing *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 n.6 (9th Cir. 2008)). However, motions to reopen removal proceedings when the removal order was entered *in absentia* are unique and are "not treated as collateral challenges to the removal order, but rather as part of the process required in order to challenge the removal order itself." *Id.* Petitioners' case is therefore different from cases such as *Rauda v. Jennings*, in which the petitioner was subject to a removal order on the merits and the BIA had already dismissed his asylum appeal. 55 F.4th 773, 776 (9th Cir. 2022).

As the Ninth Circuit confirmed in *Cui*, "[a] removal order 'become[s] final upon the earlier of (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA].'" 13 F.4th at 996 (citing 8 U.S.C. § 1101(a)(47)(B); 8 C.F.R. § 1003.39). "Because in absentia removal orders may not be appealed to the BIA without first filing a motion to reopen the order before the IJ within 180 days of the order … if the petitioner does *not* timely file such a motion before the IJ the order becomes final at the end of the 180-day period." *Cui*, 13 F.4th at 996. However, in this case, Petitioners *did* timely file a motion to reopen and rescind their in absentia removal order. (Dkt. No. 19 ¶ 45.) Because the appeal is still pending before the BIA, Petitioners' in absentia removal order is not administratively final. *See, e.g., Tkachev v. Warden of Cent. Valley Annex*, No. 1:26-CV-04039 JLT HBK (HC), 2026 WL 2065211, at *1 (E.D. Cal. Sept. 18, 2026) ("Petitioner timely contested the in absentia order by filing a motion to reopen, but the IJ denied that motion. He timely appealed and thus the order is not yet final..."); *Li*, 2026 WL 970529, at *4 (finding the petitioner's removal order was not final because of a pending BIA appeal of a motion to reopen his in absentia removal order, even when the BIA had denied his request for a stay of removal); *Bonilla v. Hermosillo*, No. 2:25-CV-02196, 2025 WL 3237854, at *2 (W.D. Wash. Nov. 19, 2025) ("[Petitioner] and his family filed a timely notice of appeal of the IJ's denial of their motion [to reopen]. That appeal is pending before the BIA. Accordingly, [Petitioner's] removal order issued in absentia is not final."); *De Oliveira v. Wesling*, No. 26-CV-308-JJM-AEM, 2026 WL 2065211, at *6 (D.R.I. July 17, 2026) ("...because his motion to reopen his removal proceedings is currently

pending before the BIA, Mr. De Olivira's in absentia removal order is not administratively final."); *E.G.M. v. Scott*, No. C26-0744-KKE, 2026 WL 914803, at *3 (W.D. Wash. Apr. 3, 2026).

Respondents nevertheless argue if Petitioners were not subject to final removal order, they would not have filed a motion to stay their removal while their appeal of the motion to reopen remains pending. The Court is unpersuaded. Whether a removal is stayed does not govern the finality of the underlying removal order. *See Shaboyan v. Holder*, 652 F.3d 988, 990 (9th Cir. 2011) ("the BIA's interim order denying a stay of removal pending resolution of [petitioner's] motion to reopen cannot qualify as a 'final order of removal.'") And the very fact Petitioners found themselves erroneously categorized as subject to a final removal order, wrongfully detained, and nearly removed, shows why a precautionary stay motion was prudent.

Because Petitioners are not subject to a final order of removal, they are not subject to mandatory detention pursuant to § 1231(a). Respondents therefore lacked statutory authority to re-detain Petitioners on this basis, in violation of both § 1231(a) and the Fifth Amendment.

## III. DUE PROCESS

"Freedom from imprisonment ... lies at the heart of the liberty" the Fifth Amendment's Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

### A. Failure To Comply with ICE Regulations

Petitioners argue ICE failed to comply with 8 C.F.R. §§ 241.4(l) and 241.13(i) in revoking Petitioners' Order of Supervision and, in doing so, violated Petitioners' procedural due process rights. "Government agencies, including ICE, must follow their own regulations." *Sipaseuth*, 2026 WL 2521847, at *4 (citing *Alvaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004)); *see also Saeteun*, 2026 WL 1454304, at *4 ("[W]here ICE fails to follow its own regulations in revoking

release, the detention is unlawful and the petitioner's release must be ordered." (citation omitted)). While "[t]he Government has significant discretion to enforce the immigration laws and, indeed, to revoke an Order of Supervision" "it must do so consistent with the requirements of its own regulations and the Due Process Clause." *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) (cleaned up).

Under 8 C.F.R. § 241.4(l), a noncitizen who is subject to a removal order may have their release revoked "to enforce a removal order or to commence removal proceedings against" a noncitizen. 8 C.F.R. § 241.4(l)(2)(iii). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his [ ] parole" and "afforded an initial informal interview promptly after his [ ] return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). Thus, as relevant here, Respondents must provide 1) notice of the reasons for the revocation, and 2) a prompt informal interview to allow the noncitizen to address the reasons for the revocation.

Respondents argue ICE complied with these regulations because 1) they served Petitioners with a Notice of Revocation of Release and 2) they conducted an informal interview to afford Petitioner an opportunity to respond. (Dkt. No. 21 at 14-15.) These alleged actions are either insufficient or not supported by the record.

**1. Notice**

First, as to providing notice of the reasons for revoking release, the Notice of Revocation includes only a single box checked next to the phrase, "the purposes of release have been served." (Dkt. No. 21 at 14; Dkt. No. 4-1 at 2). The notice does not, as it must, articulate any meaningful ground for revoking Petitioners' release. *See Cruz v. Rios*, No. EDCV 26-01374-MWF, 2026 WL 973367, at *2-3 (C.D. Cal. Apr. 8, 2026) (finding constitutionally and regulatory adequate notice was not provided because the regulations "require, at minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond" (quoting *Vo v. Lyons*, No. 1:25-CV-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026)). Nor does it include any other checked boxes indicating Petitioners violated a condition of their release, it would be "appropriate to enforce the

removal order entered against [them]…", or confirming ICE had Petitioners' travel documents and/or scheduled their removal. (Dkt. No. 4-1 at 2.) The document also fails to offer any concrete facts to support revocation of Petitioners' release. "[V]ague, boilerplate language in the Notice of Revocation of Release form is insufficient to comply with the notice requirement of Section 241.4(l)." *Aguilera-Merlo v. Mullin*, No. 5:26-CV-03715-CTS, 2026 WL 2924581, at *4 (C.D. Cal. Sept. 29, 2026). Because the Notice of Revocation did not provide Petitioners with any specific reason or factual basis for revocation, ICE failed to properly notify Petitioner "of the reasons for revocation," as required by 8 C.F.R. § 241.4(l). Petitioners were thus deprived of any meaningful opportunity to respond and contest the revocation.

Petitioners' opportunity to respond was further limited by their language barrier. Petitioners exclusively speak Spanish. (Dkt. No. 19 ¶ 75.) Despite this known fact, Respondents provided only an English-language Notice of Revocation, which was never translated to Spanish either verbally on in writing. (Dkt. No. 19-1 ¶ 6.) Consequently, Ms. Correa Reyes did not understand ICE had revoked her Order of Supervision and intended to deport her and her children. (*Id.* ¶ 7.) The only communications she received in Spanish were from one Spanish-speaking officer who informed Ms. Correa Reyes ICE would be transferring her case to San Diego. (Dkt. No. 19-1 ¶¶ 5-6.) This officer did not otherwise translate the form or explain its contents. (*Id.* ¶ 6.)

Respondents also allege they provided Petitioners with a Notice of Imminent Removal. (Dkt. No. 4-1 at 7.) Although the English-language document states ICE was "in possession of a travel document to affect [Ms. Correa Reyes's] removal," it does not state the names of her minor children who were also detained with her, nor do Respondents provide any evidence ICE had valid travel documents for Ms. Correa Reyes or her minor children.

**2. Informal Interview**

Furthermore, while the Notice of Revocation stated Petitioners "will be afforded an informal interview," (Dkt. No. 4-1 at 3), Respondents offer no evidence they actually conducted an interview. On the contrary, Ms. Correa Reyes attests she was *not* interviewed by an ICE officer on September 29, 2026. (Dkt. No. 19-1 ¶ 7.) To the extent Respondents contend Deportation

Officer Gallardo-Soriano's pre-detention exchange with Ms. Correa Reyes was an interview, this exchange failed to comply with the regulations. After handing Ms. Correa Reyes the English-language Notice of Revocation, Officer Gallardo-Soriano "did not translate it aloud in Spanish and [] did not explain what it said." (*Id.* ¶ 6.) The officer "just told [Ms. Correa Reyes] to write about why [she] did not want to return to [her] country." (*Id.*) The officer did not ask Ms. Correa Reyes about her immigration case or inform her of their intent to revoke her release or deport her. (*Id.* ¶ 7.) As instructed, Ms. Correa Reyes wrote on the form about her fear of returning to Mexico. (*Id.*) The ICE officers then informed Ms. Correa Reyes they intended to transfer her and her children to San Diego. (*Id.* ¶ 8.) When Ms. Correa Reyes asked why this was happening, Officer Gallardo-Soriano allegedly told Ms. Correa Reyes she "had not done what [she] needed to do," but did not explain or clarify these statements. (*Id.* ¶ 10.) The officer then told Ms. Correa Reyes it was her "last day" and "there was nothing she could do for [her]." (*Id.* ¶ 11.) Ms. Correa Reyes asked to speak with her lawyer, Lucy Mejia, but ICE did not permit her to do so. (*Id.* ¶ 12.) At that point, ICE confiscated Petitioners' cell phones and drove them to the San Francisco airport for their flight to San Diego. (*Id.* ¶ 16.)

This exchange does not satisfy the requirement Petitioners be given notice and an opportunity to respond. 8 C.F.R. § 241.4(l). Petitioners were never meaningfully informed that their release had been revoked or that ICE intended to deport them. Even if some marginal notice had been provided, "ICE cannot notify a noncitizen of the reasons for revocation only moments before conducting the informal interview, and logically so, because this compressed sequence would not afford the noncitizen a meaningful 'opportunity to respond to the reasons for revocation stated in the notification,' as required by the regulations." *Sipaseuth*, 2026 WL 2521847, at *5 (quoting 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3)).

**3. Authority to Revoke Supervision**

Petitioners also allege Respondents violated 8 C.F.R. § 241.4(l)(2), which requires revocation of release be done either by an "Executive Associate Commissioner" or "district director," because it is undisputed Assistant Field Office Director (AFOD) Manuel Starr revoked Petitioners' release. (Dkt. No. 4-1 at 2.) Respondents insist the Acting Executive Associate

Director delegated revocation authority to AFODs and proffer the "ERO Delegation Order," but the ERO Delegation Order invokes the "Ice Delegation Order No. 0001" as the source of the delegation authority, though Respondents do not provide a copy of the latter. (Dkt. No. 7-1.)

Regardless of any purported delegation, the regulation requires if the district director is acting instead of the Executive Associate Commissioner to authorize the revocation, it can only be when "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(*l*)(2); *see also Lopez v. Mullin*, 2026 WL 2532313, at *4 (E.D. Va. Aug. 25, 2026) (concluding "the regulation requires a contemporaneous determination that revocation served the public interest and that 'circumstances did not reasonably permit referral ... to the Executive Associate Commissioner.'") (quoting 8 C.F.R. § 241.4(*l*)(2)). Respondents do not explain why revoking Petitioners' Order of Supervision is in the "public interest," nor do they explain why circumstances did not "reasonably permit referral of [the] case to the Executive Assistant Commissioners." The Court thus finds AFOD Starr did not have authority to revoke Petitioners' release and, accordingly, that ICE failed to comply with 8 C.F.R. § 241.4(l)(2) and violated Petitioners' due process. *See Tanashyan v. Mullin*, No. 5:26-CV-04455-SP, 2026 WL 2538250, at *5 (C.D. Cal. Aug. 27, 2026) ("[S]everal federal courts ... have held that a failure to adhere to the requirement that an Executive Associate Director or a Field Office Director make the determination to revoke release in compliance with 8 C.F.R. § 241.4 violates due process and thus mandates release.") (cleaned up).

### B. *Matthews* Factors

To determine what procedures are constitutionally sufficient to protect Petitioners' liberty interest, the Court applies the three-part test established in *Matthews v. Eldridge*, balancing (1) the private interest affected; (2) the risk of an erroneous deprivation and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest. 424 U.S. 319, 335 (1976). Each of these factors weighs in Petitioners' favor.

First, Petitioners have a substantial liberty interest in remaining out of custody and having Respondents comply with their own regulations providing notice and an opportunity to be heard prior to detention. Petitioners have lived in California for more than two years. Ms. Correa Reyes

is a primary caretaker for five of her eight children, including her three minor children who were also detained. They all have an interest in "remaining in [their] home, continuing [their] employment [where applicable], providing for [their] family, obtaining necessary medical care, maintaining [their] relationships to community, and continuing to attend church." *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025). Respondents also released Petitioners twice: first on parole in 2024, when they found Ms. Correa Reyes and her children neither a flight risk nor a danger, and again on an Order of Supervision on March 31, 2026. Petitioners' releases constitute "implied promise[s]" their liberty would not be revoked unless they "failed to live up to the conditions of [their] release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Petitioners complied with every condition Respondents set and have appeared at every ICE check-in. (Dkt. No. 19 ¶¶ 4, 33; Dkt. No. 19-1 ¶ 2.) Ms. Correa Reyes also has an appeal currently pending before the BIA to restore her asylum proceedings. Under these circumstances, Petitioners have a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See id.* at 482 ("the liberty [of a person released from government custody] is valuable" and "[i]ts termination calls for some orderly process..."); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond.").

Second, Respondents' own actions in failing to comply with the regulations governing Petitioners' detention show the risk of erroneous deprivation is high. Most glaringly, Respondents erroneously claim Petitioners are subject to a final order of removal and can be detained pursuant to Section 1231(a). Moreover, there was no semblance of proper procedure in re-detaining Petitioners: Respondents provided no notice of Petitioners' revocation of release or imminent removal in a language Petitioners could understand, no reasons for revoking Petitioners' release, and no interview through which Petitioners might contest the revocation. The absence of any hearing before a neutral decisionmaker also "creates a heightened risk of deprivation for Petitioner[s]." *Sipaseuth*, 2026 WL 2521847, at 8. "[T]he mere fact that the government has the authority to detain someone does not mean that it may do so in any manner it chooses, without

affording due process." *Prasomsy*, 2026 WL 2807096, at *5 (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025)).

Finally, Respondents have not articulated any legitimate interest to support detaining Petitioners, particularly without complying with its own regulations, *see* 8 C.F.R. § 241.4(l), and providing Ms. Correa Reyes and her children with notice and an opportunity to address the basis for the revocation. Respondents argue that the government has an interest in preventing noncitizens from remaining in the United States "in violation of our law" and enforcing final removal orders "as quickly as possible." (Dkt. No. 21 at 19.) But here, Respondents fail to identify any laws Petitioners are violating as they lawfully pursue asylum proceedings and fail to prove Petitioners are subject to a final removal order in the first place. Their purported interest is therefore inapplicable here. On the contrary, "the government has *no* legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (emphasis added). Respondents made that determination when they released Ms. Correa Reyes and her children on parole and again on an Order of Supervision, and Petitioners have given Respondents no reason to question it.

In sum, all three *Matthews* factors strongly favor Petitioners. Accordingly, their re-detention under an incorrect statutory authority, *see* 8 U.S.C. § 1231(a), and Respondents' failure to comply with the regulations governing that statutory authority, *see* 8 C.F.R. §§ 241.4(l), 241.13(i), violated Petitioners' due process rights under the Fifth Amendment. These violations mandate their release and prohibit re-detention without identification of a proper statutory authority for their detention and a pre-deprivation hearing before a neutral arbitrator. *See Pinchi*, 792 F. Supp. 3d at 1036; *Li*, 2026 WL 970529, at *4.

**CONCLUSION**

For the above reasons, the Petition is GRANTED. Respondents are permanently enjoined and restrained from re-arresting or re-detaining Petitioners unless and until Respondents provide Petitioners with a pre-detention bond hearing before a neutral immigration judge. Petitioners must

be provided with at least seven days' notice of any such bond hearing. This order does not address the circumstances in which the government may detain Petitioners in the event they become subject to an executable final order of removal.

The Court will enter separate judgment and close the file.

**IT IS SO ORDERED.**

Dated: October 26, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California